Mr. Richard Weiss, Director Arkansas Department of Finance and Administration 1509 West Seventh Street, Suite 401 P.O. Box 3278 Little Rock, AR 72203-3278
Dear Mr. Weiss:
You have requested an opinion regarding the restriction on employment of a constitutional officer by a state agency, set forth in A.C.A. §21-1-401—408 (Supp. 2003). As background for your question you state:
 Assume for purposes of this opinion that a person was employed by a state university as an adjunct faculty member to teach on a `per semester' basis with no guarantee of employment from semester to semester. Each contract between an adjunct faculty member and the university is solely for the semester that the person is hired to teach. The person taught at the university during the fall semester (August to December). In November of that semester, the person was elected to the Arkansas legislature. The person did not teach during the subsequent spring or fall semester following election.
You have asked:
 Would a contract to teach during the spring semester qualify as `continu[ing] the employment' so that the legislator could teach during the spring semester without violating the restrictions in Ark. Code Ann. § 21-1-402(a) (1)?
RESPONSE
A definitive answer to this question requires factual determinations that I am neither equipped nor authorized to make. It must also be recognized that the Arkansas Ethics Commission has jurisdiction to investigate violations of A.C.A. § 21-1-401 et seq., and it has specifically been given all the powers it possesses under A.C.A §§ 7-6-217 and -218 in such investigation. See A.C.A. § 21-1-408 (Supp. 2003). I must therefore defer to the Arkansas Ethics Commission's jurisdiction as to the application of A.C.A. § 21-1-401 et seq. to particular factual scenarios. Assuming, however, that the subsequent contract is for essentially the same employment as the prior contract, it is my opinion that the answer to this question is "yes."
Regarding the general intent of these provisions, as you note, A.C.A. §21-1-402 prohibits a constitutional officer from entering into employment with a state agency after election and during his or her term unless the officer resigns prior to the employment, but authorizes one who was employed prior to election to continue employment under stated conditions. Section 21-1-402(a) states in relevant part:
 (1)(A) Subject to any restrictions or conditions prescribed by the Arkansas Constitution, no person elected to a constitutional office may, after being elected to the constitutional office and during the term for which elected, enter into employment . . . [w]ith any state agency . . . unless the constitutional officer resigns prior to entering into the employment.
 (2) Subject to any restrictions or conditions prescribed by the Arkansas Constitution, any constitutional officer who was employed by a state agency prior to being elected a constitutional officer may continue such employment, but the employment shall not thereafter be reclassified unless it is the result of a general reclassification affecting all positions of the class and grade equally, nor shall the constitutional officer receive any pay increase for that employment other than the cost-of-living increases authorized by the General Assembly without the prior approval of the Joint Budget Committee during legislative sessions, the Legislative Council between legislative sessions, and the Governor.
A.C.A. § 21-1-402(a)(1)(A) and (a)(2) (Supp. 2003) (emphasis added).
"Constitutional officer" is defined to include members of the Arkansas General Assembly, and "state agency" includes state-supported colleges and universities. A.C.A. § 21-1-401(1) and (2).
As you can see from the language emphasized above, the statute plainly authorizes a constitutional officer to continue employment he or she held prior to election to office. Regarding the particular facts at hand, it appears that the legislator was indeed employed by the state university as an adjunct faculty member prior to his or her election to the General Assembly. The question is whether by contracting to teach in the spring after not teaching for two semesters, the legislator will "continue" such prior employment so as to fall within the exception under §21-1-402(a)(2), or instead will "enter into employment" after his or her election, contrary to § 21-1-402(a)(1).
As can be seen from the following definition of "continue," this term typically is synonymous with "maintain," "retain" or "stay":
 1: to maintain without interruption a condition, course, or action 2: to remain in existence: ENDURE 3: to remain in a place or condition: STAY 4: to resume an activity after interruption
Websters Seventh New Collegiate Dictionary 181 (1972).
Given the common meaning of "continue," I believe it is clear that the statute is directed toward employment held by the constitutional officer when he or she was elected to office. Your question, however, involves the continuous nature of the employment. You state that the employment in this instance ended in December after the election, and that a new contract is required for a subsequent semester. It might therefore be contended that this falls outside the authority to maintain or retain the prior employment. However, this would seem to emphasize the uninterrupted maintenance of the position, whereas the common meaning of "continue" includes "to resume an activity after interruption." Id. Some uncertainty thus attends the use of the term "continue." This ambiguity may be resolved by reading § 21-1-402 as a whole and with reference to the other related provisions of A.C.A. § 21-1-401 et seq., bearing in mind the object and purpose of the proscription. See generally Chism v. Phelps,228 Ark. 936, 311 S.W.2d 297 (1958) (reciting this general rule of statutory construction). This review leads me to conclude that a court faced with the question likely would reject an approach to the statute that gives primacy to maintaining the particular employment arrangement while ignoring the possibility that the "employment" essentially remains the same. Section 21-1-402 reflects a clear purpose of avoiding the influence that presumptively inheres in a constitutional office vis a vis matters of state employment. Significantly, however, the employment itself is the focus of concern under this statute, and not the employment process. Subsection 21-1-402(a)(2) requires that "the employment shall not. . . be reclassified unless it is the result of a general reclassification affecting all positions," and it proscribes unapproved pay increases "for that employment." (Emphasis added). These conditions clearly are imposed with respect to "the employment." This emphasis on the employment position is also reflected in subsection 21-1-402(e), which provides:
 Former members of the General Assembly and their spouses shall not be eligible to be employed by any state agency within twenty-four (24) months after the legislator leaves office in any job or position that:
 (1) Was newly created by legislative action within the twenty-four (24) months prior to the legislator's leaving office; or
 (2) Had a maximum salary level increase of more than fifteen percent (15%) authorized by legislative action within the twenty-four (24) months prior to the legislator's leaving office.
I believe it reasonably follows from this emphasis on the position of employment as distinguished from the employment process that a constitutional officer may, subsequent to election, enter into essentially the same employment with a state agency that he or she held when elected and not run afoul of A.C.A. 21-1-402(a)(1)(A). Whether this is the case in any given instance is a factual question outside the scope of this opinion. As noted above, consultation with the Arkansas Ethics Commission may be indicated in the event of a complaint or an alleged violation.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh